IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICE W. PERRY and GEORGE PERRY, Co-Administrators of the Estate of George Perry, Deceased and Widow in her own right | : CIVIL ACTION<br>:<br>:<br>:<br>: ASBESTOS |
| v. | :<br>: |
| A. W. CHESTERTON, INC., et al and PNEUMO ABEX LLC, successor in interest to Pneumo Abex Corp., Defendants | :<br>: NO. 2:95-cv-01996 |

**O R D E R**

AND NOW, this           day of                      , 2010, upon consideration

of the Motion for Summary Judgment of Defendant, Pneumo Abex LLC and response

thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED and all

claims and cross-claims against moving Defendant are dismissed with prejudice and

judgment is entered in favor of Pneumo Abex LLC.

_____
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICE W. PERRY and GEORGE PERRY, Co-Administrators of the Estate of George Perry, Deceased and Widow in her own right | : CIVIL ACTION<br>:<br>:<br>:<br>: ASBESTOS<br>: |
| v. | :<br>: |
| A. W. CHESTERTON, INC., et al and PNEUMO ABEX LLC, successor in interest to Pneumo Abex Corp., Defendants | :<br>: NO. 2:95-cv-01996<br>: |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT PNEUMO ABEX LLC

Pneumo Abex LLC, successor to Pneumo Abex Corp. (hereinafter "Abex" or "moving Defendant"), by and through its attorney Clayton H. Thomas, Jr., Esquire, hereby respectfully requests this Honorable Court to grant its motion for summary judgment in their favor and against all parties pursuant to Federal Rule of Civil Procedure 56, and in support thereof respectfully avers as follows:

1.      Plaintiffs, Alice W. Perry and George Perry, commenced the within civil action in 1995 naming Abex and several other defendants alleging Plaintiff, George Perry contracted lung cancer from occupational  exposure to asbestos-containing products resulting in his death on April 19, 1994..

2.      According to the allegations contained in the Complaint, George. Perry was exposed to asbestos-containing products throughout his employment as a brakeman for the Chesapeake & Ohio Railroad from 1957 to 1980..  Mr. Perry was not deposed during his life and died prior to the institution of his lawsuit.

3.      Following a status conference the Court entered its Case Management Order requiring the completion of all discovery by November 1, 2009. Subsequent thereto, Defendant, Railroad Friction Products Corp filed a Motion to extend all deadlines in the Case Management

Order. The Motion for extension was granted by the Honorable Eduardo Robreno who issued a supplemental Order that all discovery shall be completed by **March 1, 2010.**.  No extension of the Court's supplemental Order has been requested or granted.

4.     Plaintiffs produced two co workers, Ed Valentine Jr. and James Clark who were deposed on February 23, 2010 in Norfolk, VA.  They both worked for the Chesapeake & Ohio as laborers on the merchandise pier in Newport News where Plaintiff, George Perry worked as a brakeman on the coal cars at the same pier.  Neither Mr. Valentine nor Mr. Clark identified Pneumo Abex or any products manufactured by Pneumo Abex while working around George Perry for the railroad at their deposition.

5.     The discovery deadline has passed and there have been no other witnesses produced by Plaintiffs for deposition to establish product identification of moving Defendant. Consequently, there has been no testimony offered as to any Abex product, nor has any evidence been introduced to support any inference that Mr. Perry has ever worked with or around any asbestos-containing product manufactured, sold, or distributed by Abex.

6.     There has been no testimony or evidence presented to create any genuine issue as to Abex's alleged liability in this case. Therefore, judgment should be entered in favor of Abex as a matter of law.

7.     Alternatively, Plaintiffs' claims against moving Defendant are barred by the doctrine of federal preemption under the BIA, SAA, and FRSA and applicable regulations.  *See Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 612-13 (1926); *Kurns, et al v. A.W. Chesterton, et al.* 2009 WL 249769, E.D. Pa., February 3, 2009

**WHEREFORE**, Defendant, Pneumo Abex LLC, respectfully requests that this Honorable Court enter an Order in the proposed form attached hereto granting summary judgment in favor of Pneumo Abex LLC dismissing all claims, including cross-claims, based upon lack of product liability evidence presented as to Pneumo Abex LLC.

CLAYTON H. THOMAS, JR.

By:    /s/ Clayton H. Thomas
CLAYTON H. THOMAS, JR., ESQUIRE
Attorney for Defendant,
Pneumo Abex LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICE W. PERRY and GEORGE PERRY, Co-Administrators of the Estate of George Perry, Deceased and Widow in her own right | : CIVIL ACTION<br>:<br>:<br>:<br>: ASBESTOS |
| v. | :<br>: |
| A. W. CHESTERTON, INC., et al and PNEUMO ABEX LLC, successor in interest to Pneumo Abex Corp., Defendants | :<br>:<br>: NO. 2:95-cv-01996 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PNEUMO ABEX LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant, Pneumo Abex LLC ("Abex"), by and through undersigned counsel, herby files this Memorandum of Law in Support of its Motion for Summary Judgment on the grounds that Plaintiffs have failed to present any evidence to create a genuine issue of material fact as to Abex's alleged liability in the case. Plaintiffs, Alice W. Perry and George Perry brought this asbestos-related personal injury action against Abex and numerous other defendants alleging that George Perry developed lung cancer as the result of alleged occupational exposure to asbestos-containing products. According to the allegations contained in the Complaint, Mr. Perry was exposed to asbestos-containing products. throughout his employment as a brakeman for the Chesapeake & Ohio Railroad from 1957 to 1980 Mr. Perry was not deposed in this case to identify any asbestos-containing products manufactured or sold by Abex. The depositions of two co workers from the Chesapeake & Ohio Railroad were taken on February 23, 2010. Neither Mr. Valentine nor Mr. Clark identified Pneumo Abex or any products manufactured by Pneumo Abex while working around George Perry for the railroad at their deposition.

The standard for summary judgment under Federal Rule of Civil Procedure 56 is well-settled. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of establishing there is no genuine issue of material fact, and that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has met this burden, the non-moving party must go beyond the pleadings to set forth "specific facts showing a genuine issue for trial" Fed. R. Civ. P. 56(e)(2). The non moving party cannot rest its opposition to a motion for summary judgment upon mere allegations or denials, but rather must submit substantive, credible evidence to show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986). There is no genuine issue if the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party." *Matsusbita Elec. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

> **A.    Plaintiffs Have Failed To Establish As A Matter Of Law That Plaintiff Breathed Asbestos Fibers from Abex Brake Shoes**

According to this Court's practices and procedures, the substantive law and product nexus standards of the Commonwealth of Pennsylvania shall be applied to this case. *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). The Pennsylvania Supreme Court has ruled that, ". . .it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiffs' asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the

defendant's product and the asserted injury." *Gregg v. V-J Auto Parts Company*, 943 A.2d 216, at 227 (Pa. 2007) (rejecting the "fiction that each and every exposure to asbestos. . .implicates a fact issue. . ."). The *Gregg* case involved a plaintiff-decedent who had alleged that he had suffered mesothelioma, and who had offered 'direct evidence' about his alleged exposure to asbestos. Therefore, the *Gregg* ruling applies to even those cases involving mesothelioma, and where 'direct evidence' is asserted by the plaintiff. As a result, Plaintiffs must prove that Plaintiff, George Perry sustained exposure to a defendant's asbestos containing product of sufficient frequency, regularity and proximity that a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury. Id. at 227. *Accord*, *Tarzia v. American Standard*, 952 A.2d 1170, 1172 (Pa. Super. 2008).

A plaintiff must establish more than the mere presence of asbestos products in a workplace. He must prove that he worked on a regular and frequent basis with or around the specific defendant's product, and that the breathed sufficient asbestos fibers from that product to cause his injuries. *Eckenrod v. GAF Corp.*, 375 Super 187, 544 A.2d 50 (1988); *See also Bushless v. GAF Corporation*, 401 Pa. Super. 358, 585 A.2d at 446 (Pa. Super. 1990) *Wilson v. A.P. Green Indus.*, 2002 PA Super 294 (Pa. Super. CT. 2002)("Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fibers came from defendant's product"). *See also Coward v. Owens-Corning Fiberglass Corp.*, 729 A.2d 614, 622 (Pa. Super. 1999)(a plaintiff's evidence of exposure and product identity must establish that he "worked, on a regular basis, in physical proximity with the product, and that [his] contact with it was of such a nature as to raise a reasonable inference that [he] inhaled asbestos fibers that

emanated from it.")  Under Pennsylvania law, a plaintiff must prove that he inhaled fibers from a specific product manufactured by a specific defendant to establish a defendant's liability in an asbestos personal injury case.  *Wilson v. A. P. Green Industries, Inc.*, 807 A.2d 922, 926 (Pa. Super. 2002); *Robertson v. Allied Signal*, 914 F.2d 369, 375 (3d Cir. 1988).

In the instant matter, it is clear that Plaintiff cannot overcome a motion for summary judgment because there has been no testimony or evidence introduced to support any inference that Mr. Perry ever worked with or around any asbestos-containing product manufactured, sold, distributed or supplied by Defendant, Abex.  Accordingly, there has been no evidence presented by any party to establish any exposure to asbestos dust or fibers by Mr. Perry from any product manufactured, sold, distributed or supplied by Defendant, Abex and judgment should be entered in favor of Abex as a matter of law.

> **B.      Plaintiffs' Complaint Should Be Dismissed As To Abex Because His Claims Are Preempted By Federal Law Governing All Aspects Of Railroad Equipment Safety.**

The Supremacy Clause of the United States Constitution, art. VI, cl. 2, empowers Congress to preempt any state law or standard that conflicts with or frustrates its efforts to establish national uniform standards, like the national safety standards Congress has enacted for railroads.  "[T]he federal government's longstanding and persuasive interest in the oversight of railroads is unique…."  *In re W. Va. Asbestos Litig.*, 592 S.E.2d 818, 824 (W. Va. 2003).  By congressional design, the Locomotive Boiler Inspection Act ("BIA" or "LIA"), 49 U.S.C. §§ 20701-20903, and the Safety Appliance Act ("SAA"), 49 U.S.C. §§ 20301-20306, provide an extensive and exclusive scheme of regulation intended to maintain uniform federal safety standards for railroad safety equipment.  *See*

*also* 49 U.S.C. §§ 20101-20144 (the Federal Railroad Safety Act ("FRSA")). These "sister statutes," *Seaman v. A.P. Green Indus., Inc.*, 707 N.Y.S.2d 299, 302 (N.Y. Sup. Ct. 2000), occupy the field of railroad equipment safety for locomotive and certain specified railroad safety appliances (including brakes) and therefore preempt all state legislative, regulatory, and common law standards. *E.g., Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 612-13 (1926) (BIA); *Pa. R.R. Co. v. Pub. Serv. Comm'n of Pa.*, 250 U.S. 566, 569 (1919) (SAA); *Southern Ry. Co. v. R.R. Comm'n of Ind.*, 236 U.S. 439, 448 (1915) (SAA).

The BIA preempts every state standard that would address "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 611. Hence, as Justice Brandeis wrote for the Court, "the [BIA], as we construe it, was intended to occupy the field." *Id.* at 613. Similarly, the field occupied (and thus preempted) by the SAA "extended to the whole subject of equipping cars with appliances intended for the protection of employees." *Southern R. Co.*, 236 U.S. at 446. As Justice Holmes explained for the Court in *Pennsylvania Rail Co. v. Public Service Commission of Indiana*, 250 U.S. at 569, "the States no more can supplement [the SAA's] requirements than they can annul them." Significantly, the SAA specifies all locomotive and railcar brakes as safety appliances over which the federal government has exclusive domain. 49 U.S.C. § 20302(a)(1)(B), (a)(4), (a)(5). The West Virginia Supreme Court recognized that exclusive federal domain over railroad brakes in *In re West Virginia Asbestos Litigation*, 592 S.E.2d at 821: "Together the [BIA and the SAA] standardized the safety requirements for many aspects of railroad operation, including brakes ...."

"This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines…. The virtue of uniform national regulation is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state." *Law v. General Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997); *In re W. Va. Asbestos Litig.*, 592 S.E.2d at 823. Thus, the BIA and the SAA preempt Plaintiffs' state law claims, which focus on Abex's allegedly negligent manufacture, production, and sale of asbestos-containing railroad brake shoes.

Although the field preemption created by the BIA and SAA makes conflict preemption moot here, specific regulations relating to rail car brakes also would preempt Plaintiff's state law claims on conflict preemption grounds. The SAA and the FRSA contain numerous regulations governing locomotive and railcar brakes, including their component parts. Plaintiff's claims conflict with those regulations.

## I.    The BIA Preempts Plaintiffs' State Law Claims With Respect To Brake Systems On Locomotives.

### a.    Courts Uniformly Recognize That The BIA Preempts The Field Of Locomotive Safety Equipment.

Following *Napier*, 272 U.S. at 611, state and federal courts uniformly hold that the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701 *et seq.*, preempts state law tort claims against the manufacturers of products incorporated into locomotive brake equipment. Indeed, the Supreme Courts of Ohio, West Virginia, California, and Alabama expressly have held that the BIA preempts plaintiffs' state law tort claims against locomotive parts manufacturers for exposure to asbestos-containing products. *See Darby v. A-Best Products Co.*, 811 N.E.2d at 1123 (Ohio); *In re W. Va. Asbestos*

*Litig.*, 592 S.E.2d at 822 (West Virginia); *General Motors Corp. v. Kilgore*, 850 So. 2d

171, 173 (Ala. 2002); *Scheiding v. General Motors Corp.*, 993 P.2d 996, 997 (Cal.), *cert.*

*denied*, 531 U.S. 958 (2000).  Many other courts have reached the same conclusion.  *See*,

*e.g.*, *DeFrancisco v. Owens-Illinois, Inc.*, No. CAM-L-1127-05 (N.J. Super. Ct. June 2,

2008) (holding asbestos-related claims against Abex preempted by the BIA); *Ransford v.*

*Griffin Wheel Company*, 2009 Cal. LEXIS 10364 (holding same); *Frastaci v. Vapor*

*Corp.*, 70 Cal. Rptr. 3d 402, 407 n.3 (Cal. Ct. App. 2007) (holding state law claims

against manufacturer preempted by the BIA); *Caradonna v. A.W. Chesterton Co., Inc.*,

No. 106785/2006, 2007 Slip Op. 50871, at *1 (N.Y. Sup. Ct. Apr. 5, 2007) (same);

*Seaman*, 707 N.Y.S.2d at 301 (same); *see also Union Pac. R.R. Co. v. Motive Equip.,*

*Inc.,* 714 N.W.2d 232, 235 (Wis. Ct. App. 2006) (holding that BIA preempted railroad's

contribution claim against manufacturer of locomotive parts); *In re Train Collision at*

*Gary, Indiana*, 670 N.E.2d 902, 910-11 (Ind. App. Ct. 1996) (finding that BIA preempted

negligence claims relating to train collision).

For example, in 2003 the West Virginia Supreme Court held that the BIA

preempts state tort law claims against manufacturers of asbestos-containing locomotive

components, reasoning that "an overwhelming body of case law persuades us that,

through passage of the Boiler Inspection Act, Congress has occupied the field of railroad

safety so pervasively that plaintiffs' claims against the defendants are preempted."  *In re*

*W. Va. Asbestos Litig.*, 592 S.E.2d at 822.  More recently, in 2004, the Ohio Supreme

Court adopted the same position, finding that "claims against locomotive manufacturers

are wholly futile."  *Darby*, 811 N.E.2d at 1125; *see also Union Pacific,* 714 N.W.2d at

235 (Wisconsin Appellate Court recognizing that "the majority of courts across the nation

hold firm to the *Napier* principle that federal law preempts all state claims, leaving no area within which states may act").

Several state superior courts also recently have held that state law claims virtually identical to those brought against Abex here are preempted by the BIA. For example, in *DeFrancisco v. Owens-Illinois, Inc.*, the Superior Court of New Jersey explained that "the BIA regulates every part of the locomotive" and therefore preempts claims against suppliers of locomotive parts, such as Abex. Likewise, in *Frastaci v. AC and S, Inc.*, the Superior Court of California held that plaintiff's claims alleging exposure to asbestos while working on locomotive and rail cars were "preempted by federal law, specifically the [BIA] and the [SAA]."

Every federal appellate court to consider the preemptive effect of the BIA on claims relating to locomotive safety has reached the same conclusion. *See, e.g., Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458 (2d Cir. 1999) (BIA preempts common law remedies relating to locomotive safety); *United Transp. Union v. Foster*, 205 F.3d 851, 860-61 (5th Cir. 2000); *Springston v. Consolidated Rail Corp.,* 130 F.3d 241, 244-45 (6th Cir. 1997) (BIA preempts state law claims based upon alleged failure to provide adequate warning devices on trains); *Carpenter v. Norfolk & Western Ry. Co.*, 145 F.3d 1330, 1998 WL 199723, at *6 (6th Cir. 1998) (table decision) (state law claims relating to inadequacy of train warning devices preempted by BIA); *First Security Bank v. Union Pac. R.R. Co.,* 152 F.3d 877 (8th Cir. 1988); *Forrester v. American Dieselelectric, Inc.,* 255 F.3d 1205, 1209-10 (9th Cir. 2001) (BIA preempted non-railroad employee's products-liability action against locomotive crane manufacturer for injuries allegedly caused by crane); *Law*, 114 F.3d at 908 (state law claims related to employees' hearing

loss preempted by BIA); *see also Consolidated Rail Corp.,* 536 F. Supp. at  657 (holding

that state statute that regulated locomotive equipment was preempted).

> **b.**  **The Pennsylvania Supreme Court's *Norfolk* Decision Is No Longer Good Law.**

Against this "overwhelming body of case law," *In re W. Va. Asbestos Litig.*, 592

S.E.2d at 824, stands only *Norfolk & Western Ry. Co. v. Pa. Public Utility Comm'n.*, 489

Pa. 109, 119, 413 A.2d 1037, 1042 (1980).  Although it acknowledged the broad

preemptive reach set forth in *Napier*, the Pennsylvania Supreme Court in *Norfolk* held

that, when it passed the FRSA, Congress narrowed preemption under the BIA by

directing that states may regulate in the area of railroad safety until federal regulations

covering the same subject are enacted.  *Norfolk*, 489 Pa. at 121, 413 A.2d 1037, 1043.

*Norfolk*'s interpretation of the FRSA as amending the BIA is contrary to the legislative

history of the FRSA and has been rejected by nearly every court to have interpreted

preemption under the BIA, even after the passage of the FRSA.

The legislative history of the FRSA established at the outset that Congress did not

intend to alter the scope and effect of the BIA.  Rather, Congress intended to *broaden* –

not narrow – the scope of uniform federal railroad regulation by enacting the FRSA:

> Over the years there have been several enactments of legislation dealing
> with certain phases of railroad safety.  These include, among others,
> Safety Appliance Acts [the SAA], ... Locomotive Inspection Act [the BIA]
> ....  These particular laws have served well.  In fact the Committee chose
> to continue them without change.  It is recognized, however, that they
> meet only certain and special types of railroad safety hazards.

H.R. REP. NO. 91-1194 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4104, 4105.  Thus,

Congress left the BIA and SAA intact when it enacted the FRSA.  *Id.*

In fact, the United States Supreme Court so held in *Pennsylvania Public Utilities*

*Commission v. Consolidated Rail Corp.*, 536 F. Supp. 653, 655 (E.D Pa. 1982), *aff'd*

9

*mem.*, 696 F.2d 981 (3d Cir. 1982), *aff'd sub nom., Penn. Public Utilities Comm'n v.*

*Consolidated Rail Corp.*, 461 U.S. 912 (1983) ("*ConRail*"), when it affirmed the Third

Circuit and the Eastern District of Pennsylvania's express rejection of *Norfolk*.  As the

District Court explained, "the legislative history of the [FRSA] shows that Congress

intended no change to the [BIA]":

> In passing the [FRSA], Congress could have repealed the [BIA] or
> recodified or subsumed it within the comprehensive [FRSA].  Instead,
> Congress concluded that the [BIA] was working well, and specifically
> determined to keep it independently in force "without change."  These
> decisions negate implied modification of any part of the [BIA], including
> its total occupation of the locomotive-equipment field.

*Id.*

    This Court recently addressed the issue of federal preemption in an asbestos

personal injury action and granted summary judgment to moving defendants, Railroad

Friction Products Company and Viad.  *See Kurns, et al v. A.W. Chesterton, et al.* 2009

WL 249769, E.D. Pa., February 3, 2009.  As Judge Goldberg found in *Kurns*, Plaintiff's

efforts at avoiding the "avalanche" of state and federal case law finding preemption are

without merit.  *Accord,. D'Amico v. Garlock Industries,* No. 02-5544, 2007 U.S. Dist.

LEXIS 67664 at 2 (ED Pa. September 13,2007) (Opinion by Judge O'Neill granting

summary judgment to moving defendant based on federal preemption).

    Since this *Conrail* decision, the Fifth and Sixth Circuits also have rejected *Norfolk*

as "unpersuasive and contrary to federal policy," *Missouri Pac. R.R. Co. v. R.R. Comm'n*

*of Tex.*, 833 F.2d 570, 576 n.7 (5th Cir. 1987), because "the preemptive effect of the BIA

on state regulation of locomotive equipment was not affected or modified by the

[FRSA]," *Springston v. Consol. Rail Corp.*, 130 F.3d 241, 245 (6th Cir. 1997) (holding

that BIA preempts state law claims based upon alleged failure to provide adequate

warning devices on trains); *see also Kilgore*, 853 S.2d at 176 (holding that *Conrail*

presents "strong, if indirect, evidence" that *Napier* continues to govern the scope of preemption under the BIA); *Scheiding*, 993 P.2d at 1000 (holding same). Just this past June, the Superior Court of New Jersey agreed that the FRSA left the BIA and SAA "fully intact." *DeFrancisco*, *id*

As the Pennsylvania Supreme Court has recognized, "the decisions of the United States Supreme Court interpreting federal statutes are binding" on state courts. *Krentz v. Consolidated Rail Corp.*, 589 Pa. 576, 597 n.15, 910 A.2d 20, 33 n.15 (2006) (holding plaintiff's state law claims were preempted by FRSA); *see also Purpose Orchid, Inc. v. Pa. State Police*, 572 Pa. 171, 179-80, 813 A.2d 801, 806 (2002) (explaining that when the United States Supreme Court has interpreted a matter of federal constitutional law, Pennsylvania courts must rule according to "how we believe the U.S. Supreme Court would today dispose of the issue."). Thus, at least since the Supreme Court's ruling in *Conrail*, *Norfolk* is no longer good law, even in Pennsylvania.

In addition to the United States Supreme Court's rejection of *Norfolk*, the Pennsylvania Supreme Court itself recently has given cause to believe that it has abandoned *Norfolk*. In *Krentz*, 589 Pa. 576, 910 A.2d 20, the Pennsylvania Supreme Court upheld a defense of FRSA preemption without even mentioning its *Norfolk* decision. In doing so, *Krentz* cited *Napier*, which *Norfolk* essentially deemed defunct almost 30 years ago. 589 Pa. at 599, 910 A.2d at 34.

       **c.**    **Although BIA Field Preemption Is Not Based On Active Regulation, The Federal Government Actively Regulates Locomotive Brakes.**

Even if *Norfolk* was still good law, however, Plaintiffs' claims against Abex still would be preempted because the Secretary of Transportation has promulgated regulations

specifically addressing brakes on locomotives. *See* 49 C.F.R. §§ 229.46-59. Accordingly, Plaintiffs' state law tort claims against Abex are preempted by the BIA because those claims are based on his exposure to alleged asbestos-containing brake system components including shoes regulated by the FRA at the Sayre facility.

The fact that asbestos itself is not specifically regulated by the Secretary of Transportation does not negate preemption of Plaintiffs' claims because federal regulations cover the materials from which rail car brakes are made. In fact, the federal government has specifically focused on asbestos "materials." In 1992, Congress enacted the Rail Safety Enforcement and Review Act of 1992, Public Law 102-365, 106 Stat. 972. Section 10 of that Act added a provision to the FRSA requiring the Secretary to assess "the extent to which environmental … conditions in locomotive cabs … affect … health," including consideration of "the effects on train crews of the presence of asbestos in locomotive components." *Id.* The Act also instructed the Secretary to "complete a rule-making process to consider prescribing regulations to improve the safety and working conditions of locomotive cabs." The 1992 Act required a "report to Congress on the reasons for that determination" if "the Secretary determines not to prescribe regulations." *Id.*

Pursuant to this mandate, in September 1996, the FRA issued a report to Congress assessing asbestos as a possible factor affecting locomotive cab safety and working conditions. The FRA expressly found that asbestos regulation was unwarranted: "FRA does not feel that further action with respect to the presence of asbestos in locomotive cabs is warranted at this time" and "recommends no action be taken on the issue of

asbestos in locomotives." Report to Congress, *Locomotive Crashworthiness and Cab Working Conditions* at 10-1, 10-12, 12-9 (1996).

As the United States Supreme Court emphatically has stated: "a federal decision to forego regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision *to* regulate...." *Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 384 (1983) (Court's emphasis); *see also Norfolk & Western Ry. Co. v. Public Utilities Comm'n of Ohio*, 926 F.2d 567, 570 (6th Cir. 1991) (holding that FRSA preempts state regulation where FRA considered but declined to adopt similar regulation). Thus, the fact that the Secretary declined to regulate asbestos as a material or component of brake products reflects the Secretary's conclusion that excluding the use of asbestos is not necessary or desirable – not an indication that state law claims against asbestos-containing products in railcars should be permitted to proceed. *See Scheiding*, 993 P.2d at 999 n.2 (Cal. 2000). Given the active federal regulation of rail car brake systems, states should not be dictating what materials are and are not appropriate for use in those systems.

**II.    The SAA And Its Regulations Preempt Plaintiffs' State Law Claims.**

Congress enacted the SAA for the same purposes as the BIA, *Urie v. Thompson*, 337 U.S. 163, 190 (1949): just as the locomotive will be able to cross state lines without concern for disparate state safety standards, so too will the railcars it is pulling. Courts have long recognized that the SAA fully occupies the field of safety appliances on railcars with respect to those devices specifically enumerated in the statute and its accompanying regulations. *See Southern R. Co.*, 236 U.S. at 446; *Pennsylvania R. Co.*,

250 U.S. at 569.  Thus, state law claims seeking to impose different or additional standards on safety appliances covered by the SAA are preempted.

For example, most recently in *DeFrancisco*, the court held that "the preemption analysis that governs the BIA likewise governs the SAA," and thus held state law claims against Abex relating to exposure to asbestos-containing railroad brakes barred by the SAA. Similarly, in *Ransford*, the California Superior Court held that claims against manufacturers of asbestos-containing locomotive and railcar parts are preempted by both the BIA and SAA.  *See also Caradonna*, 2007 WL 1227601, at *1 (explaining that the SAA "occupies the entire field of rail car safety appliance regulation").

In *Carrillo v. ACF Industries, Inc.*, 980 P.2d 386, 390 (Cal. 1999), the California Supreme Court applied *Shields v. Atlantic Coast Line Railroad Co.*, 350 U.S. 318 (1956), the United States Supreme Court's most recent analysis of the SAA, and held that the SAA preempts state law claims alleging that a railcar was defective because it lacked a type of guardrail that was not required by regulations promulgated under the SAA.  This broad reading is the essence of field preemption.  Similarly, the court in *Jordan v. Southern Railway Co.*, 970 F.2d 1350 (4th Cir. 1992) held that categories of safety appliances listed in § 20302 of the SAA – including hand, power, and train brakes – "*should be broadly read to include every device falling within that category*, even if the Secretary of Transportation has not seen fit to standardize a particular type or use of that device" in the SAA's regulations.  (Emphasis added.)

Not only the hand and power brake systems specifically identified as safety equipment within the scope of the SAA, 49 U.S.C. § 20301 *et seq*., but also their components must be classified as safety appliances under the SAA.  *See Shields*, 350 U.S.

at 390-91; *Jordan*, 970 F.2d at 1354. *Jordan* is particularly instructive in this respect because the allegedly defective product at issue in that case, a ratchet mechanism on a railroad ballast car door, was not prescribed by any SAA regulations, and bore no resemblance to the safety appliances listed in § 20302(a). 970 F.2d at 1354. Accordingly, the court in *Jordan* held that the ratchet mechanism was not a "safety appliance" within the terms of the SAA, and thus the plaintiff could not maintain a FELA suit against his employer for a violation of the SAA. *Id.*

Here, in contrast, the SAA explicitly lists brake systems as a safety device. 49 U.S.C. § 20302(a)(1)(B), (a)(4), (a)(5). Moreover, specific regulations cover railcar brake systems.[1] *See*, *e.g.*, 49 C.F.R. §§ 231.12(a), 231.13(a), 231.14(a) (regulations for efficient hand brakes); 49 C.F.R. §§ 232.1, 232.3 (App. B) (power brake specifications); 49 C.F.R. §§ 232.11, 232.12, 232.16, 232.17 (App. B) (testing requirements); 49 C.F.R. §§ 232.403, 232.405, 232.407, 232.409 (specifications for end-of-train devices).

Allowing states to impose liability for matters not specified in these regulations, as Plaintiffs would have this Court do, would require that railroads change safety equipment every time a railcar crossed state lines, or else would permit the most restrictive individual state to set policy for the entire country. *See Carrillo*, 980 P.2d at 389; *see also Law*, 114 F.3d at 108 (reaching same conclusion under the BIA). Not only would such actions improperly burden interstate commerce, but the differing safety standards that subsequently would develop over 50 states would effectively destroy the

---

[1] The regulations expressly provide that "preemption should … be considered pursuant to the [BIA], the [SAA], and the Commerce Clause based on the relevant case law pertaining to preemption under those provisions." 49 C.F.R. § 232.13.

"vital" standardization of safety devices that railroad employees depend upon "at all times and in all weather conditions." *Carrillo*, 980 P.2d at 389.

Accordingly, Plaintiffs' state law claims are preempted by the SAA and its regulations governing brake systems on railcars.

## III.     The FRSA And Relevant Regulations Preempt Plaintiffs' Claims.

Although the foregoing analysis under the BIA and the SAA results in preemption of all of Plaintiffs' claims against Abex, there is one more statute with preemptive effect here. Plaintiffs' claims against Abex also are preempted by the Federal Railroad Safety Act, which Congress enacted to ensure that the "laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable," 49 U.S.C. § 20106, and by federal regulations relating to railroad safety. Because federal regulations related to the design and manufacture of braking systems on railcars encompass the subject matter of Plaintiffs' common law causes of action, Plaintiffs' claims also are preempted by the FRSA.

The FRSA expressly provides that a state may adopt or continue in force any law or standard relating to railroad safety *but only* "until such time as the Secretary [of Transportation] has adopted a rule, regulation, order or standard covering the subject matter of such State requirement." 49 U.S.C. § 20106.[2] Any additional or more stringent

---

[2] Congress recently clarified the FRSA's preemption provision. The clarification is not relevant to this litigation, however, because it expressly applies only to claims that arose on or after January 18, 2002. 49 U.S.C. § 20106(b)(2); *see also DeFrancisco; Ransford v. Griffin Wheel Company*, 2009 Cal. LEXIS 10364(finding 2007 Clarification of § 20106 inapplicable to asbestos-related claims where "the events at issue … occurred long before [January 18, 2002]"). Moreover, the clarification does not alter the preemption analysis under the FRSA. Rather, the revised § 20106 clarifies that a plaintiff

standard may be adopted by a State only when "necessary to eliminate or reduce an essentially local safety hazard," and must not unreasonably burden interstate commerce. *Id.* The Supreme Court has expressly held that state common law legal duties, to the extent they attempt to address an area of railroad operations, fall within the scope of FRSA's preemption provisions. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *accord Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (common law duty of care relating to warning devices at railroad crossing preempted by FRSA). Similarly worded preemption provisions in other federal statutes also support this proposition. *See, e.g., Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522 (1992) (holding that express preemption language barring additional "'requirement[s]'... imposed under State law'" preempted common law claims).

In *Easterwood*, the Supreme Court held that to prevail on a FRSA preemption claim, a party must show that the federal regulations "substantially subsume" the subject matter of the relevant state law. 507 U.S. at 664. The *Easterwood* Court also held that the FRSA's express preemption clause applies to regulations adopted pursuant to all three statutes: "[t]he plain terms of [the FRSA] do not limit the application of its express pre-emption clause to regulations adopted by the Secretary pursuant to FRSA. Instead, they state that any regulation 'adopted' by the Secretary may have pre-emptive effect, regardless of the enabling legislation." *Id*. at 663 n.4.

---

may bring state law claims alleging that a party violated federal regulations, its own internal plans, rules, or standards implemented pursuant to federal regulations, or other state laws that are not preempted by the FRSA. *See, e.g., Mastrocola v. Southeastern Pa. Transp. Auth.*, 941 A.2d 81 (Pa. Commw. Ct. 2008). Because Plaintiff's claims here seek to impose state law standards that differ from those under federal law, Plaintiff's claims would continue to be preempted under § 20106 even if the clarification applied.

As the Sixth Circuit held in *CSX Transportation, Inc. v. Public Utilities Commission of Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), "FRSA preemption relates to *all* rules and regulations regarding railroad safety *promulgated by the Secretary* [of Transportation], whether or not such regulations are promulgated by the FRA [Federal Railroad Administration] through power delegated by the Secretary." (Court's emphasis.)  Hence the FRSA provides a back-up basis for pre-emption under the BIA and SAA, as well as pre-emption for regulations adopted pursuant to its own authority.

As noted above, regulations promulgated under the SAA include specifications for hand brake systems on passenger railcars (49 C.F.R. §§ 231.12, 231.13, and 231.14); requirements for freight train car brakes (49 C.F.R. § 232.103); and requirements for end-of-train devices to monitor power brake systems on all railcars (49 C.F.R. §§ 232.403, 232.405, 232.407, and 232.409).  These regulations also preempt this case under the separate mantle of FRSA conflict preemption.  Other preemptive regulations governing railcar brake systems and issued pursuant to the FRSA itself include title 49 C.F.R.§§ 212.213 and 212.217, which authorize state "motive power and equipment inspectors" and "car inspectors" to conduct inspections of railroad cars for compliance with all of the above-referenced federal brake system standards.

Plaintiffs' state tort claims conflict directly with the foregoing FRSA and SAA regulations governing railcar brake systems. Thus, the regulations substantially subsume the subject matter of the manufacture, production, and sale of such brake systems, "leaving no room for a private action based upon state law theories."  *Ouellette v. Union Tank Car Co.*, 902 F. Supp. 5, 10 (D. Mass. 1995) (preempting plaintiff's tort claims under FRSA where claims conflicted with federal safety regulation).

The Pennsylvania Supreme Court reached the same conclusion recently in *Krentz*, 589 Pa. at 602, 910 A.2d at 35-36. There the Supreme Court held that federal brake inspection and testing regulations preempted the Pennsylvania Occupied Cross Rule, a state statute intended to regulate blocked railroad crossings in the interest of highway safety. Despite a lengthy analysis of preemption law and citation to *Napier*, the Supreme Court did not cite its quarter-century old *Norfolk* decision. *Accord*, *George v. Consolidated Rail Corp.*, 756 A.2d 126, 128 (Pa. Commw. Ct. 2000) (common law claims relating to adequacy of railroad crossing warning devices preempted); *Nye*, 437 F.3d at 563 (finding common law claims relating to adequacy of warning devices at railroad crossing preempted); *Toadvine v. Norfolk S. Ry. Co.*, 129 F.3d 1265, 1997 WL 720431, at *2 (6th Cir. Nov. 13, 1997) (table decision) (state law claims alleging defective design of railroad car preempted by FRSA); *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410, at *5 (N.D. Ill. Apr. 26, 2004) (finding that common law duty of care relating to training of railroad engineers was preempted by the FRA's "detailed and particularized requirements that railroads must meet regarding the overall structure of their training program"); *Tolentino v. United Parcel Serv., Inc.*, No. 98-CV-10369-MEL, 2001 WL 92201, at *3-4 (D. Mass. Jan. 11, 2001) (plaintiffs' negligence claims preempted under FRSA by regulations addressing the labeling and inspection of hazardous materials shipped by rail); *Roland v. Olin Corp.*, No. 95-CV-70615, 1996 WL 943902, at *2 (E.D. Mich. Oct. 23, 1996) (plaintiff's negligence and product liability claims preempted under FRSA by federal regulation governing the design of the operating platform, ladder and safety railing on railroad tank cars).

Similarly, in *Tolentino*, the district court determined that the plaintiffs' negligence claims against a railroad were preempted by the FRSA. 2001 WL 92201, at *3-4. Three toll collectors had sued the railroad, alleging that they had been harmed by fumes from a trailer fire on the railroad's property. *Id.* at *1. The court held that plaintiffs' claims that the railroad had negligently inspected the trailer before the fire and had provided incorrect information to arriving firefighters were "substantially subsumed" by two specific regulations promulgated pursuant to the Hazardous Materials Transportation Act. *Id.* at *3-4. Because the regulations set forth specific requirements to meet safety standards, they sufficiently covered the subject matter of plaintiffs' negligence claims. *Id.*

In this case, the relevant SAA and FRSA regulations provide specific requirements for the proper and safe design, manufacture, maintenance, and testing of brake systems on railroad cars. Plaintiffs' state tort claims directly conflict with these regulations, and thus are preempted by the FRSA. Under the FRSA as well, therefore, this Court should grant Abex's Motion to Dismiss Plaintiffs' complaint.

## IV. If State Law Controlled, This Litigation Would Constitute State Regulation.

As the Supreme Court has noted, state tort actions can have the same regulatory effect as positive legislative enactments: "[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone*, 505 U.S. at 521 (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)). Similarly, in *BMW of North America v. Gore*, 517 U.S. 559, 572 n.17 (1996), the Supreme Court held: "State power

20

may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute."

Plaintiffs do *not* plead claims alleging variance from, or seeking to enforce, regulatory provisions promulgated pursuant to the BIA, the SAA, or the FRSA regarding the braking systems on locomotives and railcars. Rather, Plaintiffs' state common law tort claims seek to impose requirements on the design and manufacture of locomotive and rail car braking systems that would differ substantively from relevant federal regulations. Those claims therefore are preempted by the BIA and the SAA, as well as separately under the FRSA. *See, e.g., Tolentino*, 2001 WL 92201, at *3-4 (plaintiffs' state law negligence claims preempted by FRSA). Accordingly, because the BIA, the SAA, and the FRSA preempt Plaintiffs' state law claims, those claims should be dismissed.

## V. Even Though Plaintiffs' Claims Are Preempted, Plaintiffs Still Have A Full And Complete Remedy Under FELA.

As the Ninth Circuit has noted, railroad workers' remedies for their injuries lie in the "strong medicine" of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, which allows railroad workers to recover against their employers for all occupational injuries, including those sustained as a result of alleged exposure to asbestos-containing locomotive and railcar equipment. *Law*, 114 F.3d at 912; *see also Caradonna v. A.W. Chesterton Co., Inc.*, 841 N.Y.S.2d 431, 433 (N.Y. Supr. Ct. 2007) (holding that while BIA preempts state law claims alleging exposure to asbestos-containing locomotive parts, it does not preempt FELA claims alleging the same). FELA authorizes recovery of compensatory damages, including pain and suffering, for injuries caused by even the "slightest" negligence of a railroad employer. *Id.* "Thus, the federal government has established a comprehensive mechanism for vindicating the rights of

railroad workers—a mechanism that doesn't undermine the [federal] goal of uniformity."
*Id.*

In sum, despite the preemption of state tort claims by the BIA, SAA, and FRSA, Plaintiffs still are left with the remedy Congress deemed appropriate for any alleged injuries pursuant to the FELA claims he has brought against Conrail and the Pennsylvania Railroad, his employers in this action.  Accordingly, Plaintiffs' claims against Abex should be dismissed.

**C.**     **<u>CONCLUSION</u>**

For the reasons stated above, Defendant, Pneumo Abex LLC respectfully requests that summary judgment be granted in its favor and against the Plaintiffs and all other parties herein.

Respectfully submitted,

**CLAYTON H. THOMAS, JR, ESQUIRE**

By:_/s/ Clayton H. Thomas, Jr._____
        Clayton H. Thomas, Jr. Esquire
        1515 Market Street
        Suite 2050
        Philadelphia, PA  19102
        (215) 568-7070

Dated: _____, 2010

## CERTIFICATE OF SERVICE

I, Clayton H. Thomas, Jr., do hereby certify that a true and correct copy of the foregoing was served upon all parties by electronic service through the Court's ECF/Pacer system on March 26, 2010.

Respectfully submitted,

**CLAYTON H. THOMAS, JR, ESQUIRE**

By: _/s/ Clayton H. Thomas, Jr._____
       Clayton H. Thomas, Jr. Esquire
       1515 Market Street
       Suite 2050
       Philadelphia, PA 19102
       (215) 568-7070

Dated: March 26, 2010

Filename:           Motion for S J with Memo and Order 03-26-10.doc
Directory:          C:\Client Files\AC Cases\Perry, Alice Admx\Court Filings
Template:           C:\Documents and Settings\Jamie\Application
      Data\Microsoft\Templates\Normal.dot
Title:              IN THE UNITED STATES DISTRICT COURT
Subject:
Author:
Keywords:
Comments:
Creation Date:      3/26/2010 5:26:00 PM
Change Number:      2
Last Saved On:      3/26/2010 5:26:00 PM
Last Saved By:
Total Editing Time: 2 Minutes
Last Printed On:    3/26/2010 5:27:00 PM
As of Last Complete Printing
      Number of Pages: 28
      Number of Words:       6,689 (approx.)
      Number of Characters:  38,132 (approx.)