```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALICE PERRY, Administratrix   :   CONSOLIDATED UNDER
of the Estate of George       :   MDL 875
Perry, deceased and ALICE     :
PERRY                         :
                              :
     Plaintiff,               :
                              :
     v.                       :
                              :
A.W. CHESTERTON, INC.,        :
ET AL.,                       :
                              :   E.D. PA CIVIL ACTION NO.
     Defendants.              :   2:95-cv-01996-ER
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              December 4, 2013

**I.   BACKGROUND**

Before the Court is the Rule 12(b)(6) Motion to Dismiss of Defendant Railroad Friction Products Corporation ("Defendant" or "RFPC").

Plaintiff Alice Perry, as administratrix and in her own right, ("Plaintiff" or "Mrs. Perry"), asserts that her husband ("Decedent" or "Mr. Perry") developed asbestos-related injuries while installing and removing RFPC brake shoes located on various types of railcars. RFPC argues that Plaintiff's complaint should be dismissed because her claims are preempted by the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 <u>et seq.</u> Plaintiff argues that the LIA does not preempt her claims

1

because the brake shoes that Decedent was exposed to were not found on a locomotive.

The sole issue in this case is whether the LIA operates to preempt Plaintiff's state law claims, especially in light of the Supreme Court's decision in <u>Kurns v. Railroad Friction Products Corp.</u>, 565 U.S. ___, 132 S. Ct. 1261 (2012), which affirmed the breadth of the long-standing field preemption of the LIA. Specifically, the issue is whether the LIA's broad preemptive scope covers Plaintiff's claims relating to Decedent's exposure to brake shoes located on railcars, and not on locomotives. For the reasons that follow, the Court holds that the LIA operates to preempt Plaintiff's claims because the railcar brake shoes are a "part or appurtenance" of the locomotive. Accordingly, Defendant's motion to dismiss will be granted.[1]

## II. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable

---

[1] The Court denied RFPC's motion for summary judgment based on federal preemption without prejudice on June 28, 2011 in light of the Supreme Court granting certiorari in <u>Kurns</u>. Following the Supreme Court's decision, the Court directed all defendants that motions to dismiss related to <u>Kurns</u> must be filed by September 17, 2012. Defendant's motion timely followed that order.

inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly

3

authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

    **A.   The Preemptive Effect of the LIA**

        1.   The Supreme Court's Decision in Kurns and its Affirmation of Napier

The Supremacy Clause dictates that "federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" Kurns, 132 S. Ct. at 1265 (quoting U.S. Const., Art. VI, cl. 2). There exist three types of federal preemption: express preemption, implied conflict preemption, and field preemption. Kurns v. Chesterton, 620 F.3d 392, 395 (3d Cir. 2010) ("Kurns I"), aff'd sub nom. Kurns v. Railroad Friction Prods. Corp., 132 S. Ct. 1261 (2012). Field preemption "arises when a state law or regulation intrudes upon a 'field reserved for federal regulation.'" Id. at 396 (quoting United States v. Locke, 529 U.S. 89, 111 (2000)). "Where Congress occupies an entire field . . . even complimentary state regulation is impermissible." Arizona v. United States, 567 U.S. ___, 132 S. Ct. 2492, 2502 (2012).

4

In Kurns, the Supreme Court reaffirmed its decision eighty-five years earlier in Napier v. Atlantic Coast Line R. Co., 272 U.S. 605 (1926), which held that state requirements of certain safety equipment on railroads were preempted by the LIA. The LIA, the Napier Court had said, "manifest[s] the intention to occupy the entire field of regulating locomotive equipment[.]" Napier, 272 U.S. at 611. Congress had bestowed upon the Interstate Commerce Commission the "general" power (which now rests with the Secretary of Transportation, see Kurns, 132 S. Ct. at 1266 n.3) to address, to the exclusion of the states, "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." Napier, 272 U.S. at 611.

In Kurns, the plaintiff had "worked in locomotive repair and maintenance facilities, where his duties included installing brake shoes on locomotives and stripping insulation from locomotive boilers." 132 S. Ct. at 1264. After the plaintiff was diagnosed with mesothelioma, he brought state law claims of defective design and failure to warn, alleging that the products to which he had been exposed contained asbestos and caused his injuries. Id. After the plaintiff passed away, his widow and the executrix of his estate continued to pursue the case. Id. at 1265.

The Kurns petitioners made two broad arguments in support of their position that the LIA did not preempt their state law claims. First, they argued that the Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. §20102 et seq., limited the scope of field preemption as defined by Napier. Id. at 1266. Next, they argued that even if the FRSA did not limit the field, their claims were not preempted by the field as defined by Napier. Id.

Regarding their first argument, the Court noted that although there is a preemption provision in the FRSA that dictates that a state may "adopt or continue in force" a rule or regulation related to railroad safety until such time as the Secretary of Transportation issues a rule or order "covering the subject matter of the State requirement[,]" 49 U.S.C. § 20106(a)(2) (2006 ed., Supp. III), this provision does not limit the field preemption prescribed by Napier. Kurns, 132 S. Ct. at 1267. This is because the FRSA is a "gap-filler" statute, which "leaves existing statutes intact, . . . and authorizes the Secretary to fill interstitial areas of railroad safety with supplemental regulation." Id. (quoting Marshall v. Burlington N., Inc., 720 F.2d 1149, 1152-53 (9th Cir. 1983)). The FRSA, therefore, had no effect on the scope of preemption as defined by Napier. Id.

The Kurns petitioners made several arguments in support of their contention that their state law claims were outside of the

6

field that Napier found to be preempted by federal law. The Court rejected each argument. For example, the petitioners tried to draw a distinction between the use of locomotives and locomotive equipment on the railroad line, and the repair and maintenance of such equipment off the line. The petitioners argued that the field of LIA preemption extended only to the use of locomotives and equipment while trains were in use, but did not extend to the repair and maintenance of locomotives in facilities dedicated to such repair and maintenance. Id. The Court rejected this "attempt to redefine the pre-empted field." Id. The petitioners' state law claims were "aimed at the equipment of locomotives[,]" and thus were "'directed to the same subject'" as the LIA, and therefore "Napier dictates that they fall within the pre-empted field."[2] Id. (quoting Napier, 272 U.S. at 612).

Another argument the Kurns petitioners advanced was that their claims against manufacturers, as opposed to common carriers themselves, were not preempted because the LIA did not

---

[2]   The Third Circuit said that the goal of the federal railroad regulatory scheme is to prevent a situation in which each state could mandate different safety devices. If every state had different standards, the effect on railroads would be "'paralyzing,'" because railroads often pass through many states in short periods of time and could have to change safety devices when crossing state lines, or use devices conforming to the standards of the strictest state. Kurns I, 620 F.3d at 398 (quoting Oglesby v. Del. & Hudson Ry. Co., 180 F.3d 458, 461 (2d Cir. 1999)).

regulate manufacturers at the time the petitioners' decedent was exposed to the asbestos in question. The Court rejected this argument because "<u>Napier</u> defined the field pre-empted by the LIA on the basis of the physical elements regulated -- 'the equipment of locomotives' -- not on the basis of the entity directly subject to regulation." <u>Id.</u> at 1269 (quoting <u>Napier</u>, 272 U.S. at 612). Besides the broad scope of the field of preemption as defined by <u>Napier</u>, the <u>Kurns</u> Court further noted that:

> Petitioners' proposed rule is also contrary to common sense. Under petitioners' approach, a State could not require <u>railroads</u> to equip their locomotives with parts meeting state-imposed specifications, but could require <u>manufacturers</u> of locomotive parts to produce only parts meeting those state-imposed specifications.

<u>Id.</u>

The Court rejected the petitioners' final argument that attempted to differentiate state common law claims from state legislation or regulation. The Court's language confirmed that the field of preemption as defined by <u>Napier</u> was "'the entire field of regulating locomotive equipment,' to the exclusion of state regulation[,]" which provides for no exceptions for state common law duties or standards of care. <u>Id.</u> at 1269 (quoting <u>Napier</u>, 272 U.S. at 611-12).

    2.   <u>What Constitute "Parts and Appurtenances"</u>

8

It is well-settled that the federal government has the exclusive power to regulate "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." Napier, 272 U.S. at 611. Plaintiff here argues that asbestos-containing brake shoes located on railcars do not fall into the category of a locomotive part or appurtenance.[3] Defendant asserts that the purported "railcar distinction" that Plaintiff asserts is without merit.[4]

---

[3] Plaintiff cites to Varney v. Norfolk & W. Ry. Co. for the proposition that "any product not attached to the locomotive" is not an appurtenance under the LIA. 899 F. Supp 280 (S.D. W. Va. 1995). Plaintiff distinguishes between the asbestos that caused Plaintiff's injury, and the actual brake shoe that contained the asbestos by arguing that "[asbestos] dust escaping from products installed on railcars cannot be appurtenant to a locomotive" because the asbestos was never attached to a locomotive. This case, however, was not asbestos-related and was decided almost twenty years prior to the Kurns decision. See also Milesco v. Norfolk S. Corp., 807 F. Supp. 2d 214, 221 (M.D. Pa. 2011) (holding Plaintiff's claims were not preempted by LIA). Milesco involved a cushion unit that was removed from the railcar for purposes of scrapping and otherwise decommissioning of the part and was also not asbestos-related. Notably, the cushion unit did not cause injury until it was hundreds of miles away from its prior point of use, which was over a year and a half after it was removed from railcar.

[4] RFPC cites to the dictionary definition of an "appurtenance" at the time the LIA was enacted as something that "belongs to something else; an adjunct; an appendage; an accessory; something annexed to another thing more worthy; in common parlance and legal acceptation, something belong to another thing as principal . . . ." Webster's Revised Unabridged Dictionary (1913).

What is a "part or appurtenance" under the LIA has been judicially defined by several courts.[5] The Supreme Court defined the scope of "every part of the locomotive and tender[6] and of all appurtenances" as "whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order" of the Secretary. S. Ry. Co. v. Lunsford, 297 U.S. 398, 402 (1936).[7] The Third Circuit in Kurns I found that asbestos insulation on locomotive boilers and brakes "undoubtedly" fell into the category of "parts and

---

[5]    See Milesco, 807 F. Supp. 2d at 221 (noting a cushion unit that absorbed energy transferred between railcars when they were moved to prevent derailment was an appurtenance under the LIA). The court noted in its opinion that "the [LIA] would clearly preempt state law claims challenging the design and construction of the railcar to which the unit was attached, as well as the selection and installation of the cushion unit" because the cushion unit was "a part or appurtenance" of the locomotive. Id. See also Burlington N. R.R. Co. v. Montana, 805 F. Supp. 1522, 1529 (D. Mont. 1992) (holding two-way telemetry devices, partially located at rear of train, were locomotive parts or appurtenances under the LIA, despite contention that part of device was not located on locomotive); Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex., 671 F. Supp. 466, 473-74 (W.D. Tex. 1987) (rejecting argument that LIA did not preempt a state regulation requiring two-way radio at caboose of train because similar device would have been required to be used on locomotive as well); Zollinger v. Pittsburgh & Lake Erie R.R. Co., 337 F. Supp. 913, 914 (W.D. Pa. 1972) (finding push-pole used to move car located on different track from engine is an appurtenance under LIA).

[6]    A "tender" is a separate car attached to a locomotive that historically carried fuel and water. Kurns, 132 S. Ct. at 1265 n.1.

[7]    The Supreme Court further held that "mere experimental devices" are not parts or appurtenances. Lunsford, 297 U.S. at 402.

10

appurtenances" under the Lunsford definition. Kurns I, 620 F.3d at 399.

The authority of the Secretary to regulate a specific piece of equipment has been dispositive in the LIA preemption analysis, even if the part is not integral or essential. Similar to the Lunsford definition of parts and appurtenances, the Ninth Circuit held that under the LIA, the state may not impose liability pertaining to "a part or attachment of a locomotive if it is 'within the scope of the authority delegated to the [Secretary]' to prescribe the same part or attachment." Marshall v. Burlington N., Inc., 720 F.2d 1149, 1152 (9th Cir. 1983) (quoting Napier, 272 U.S. at 611) (finding Secretary had authority to prescribe warning lights on locomotives and state regulation on subject was therefore preempted). Notably, the Secretary has the authority to regulate the entire locomotive braking system and passenger cars, and has used that authority to regulate passenger cars and equipment thereon.[8]

---

[8]   49 C.F.R § 232 et seq. (regulating locomotive brake systems); 49 U.S.C. § 20133 (establishing Secretary is tasked with "prescrib[ing] regulations establishing minimum standards for the safety of cars used by railroad carriers to transport passengers."); see also 49 C.F.R. § 238.103 (materials used in passenger cars must meet flammability standards); 49 C.F.R. § 238.117 (all moving parts, pipes, electrical conductors, and other parts on passenger equipment must have guards to minimize risk of injury); 49 C.F.R. § 238.19 ("Reporting and tracking of repairs to defective passenger equipment"); 49 C.F.R. § 238.121 ("Emergency communication").

### B.    Plaintiff's Claims are Preempted by the LIA

Plaintiff's state law claims pertaining to Decedent's alleged exposure to asbestos-containing brake shoes located on railcars are preempted.

The Supreme Court, in Kurns, 132 S. Ct. at 1261, affirmed[9] the longstanding rule that the preemptive reach of the LIA "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." Napier, 272 U.S. at 611. The Napier Court held that although the Secretary had not specifically regulated the exact safety equipment that the states had attempted to impose upon locomotives, state regulation of that equipment nevertheless was preempted. Id. at 613.

Even though the asbestos-containing products to which Plaintiff alleges Decedent was exposed were on railcars rather than on locomotives, such products are covered by the broad scope of LIA preemption. Initially, Plaintiff's state law claims are aimed at the equipment of the locomotives; namely the locomotive braking system. See Kurns, 132 S. Ct. at 1267. Thus, Plaintiff's state law claims are "directed to the same subject"

---

[9]    Plaintiff asserts that the United States Supreme Court should abandon field preemption under the LIA, but acknowledges that this Court cannot simply ignore Supreme Court precedent that instructs otherwise.

12

as the LIA and therefore "fall within the preempted field." Id. (quoting Napier, 272 U.S. at 612).

Moreover, Plaintiff's claims are preempted under the Lunsford definition of "parts and appurtenances" in two ways. First, field preemption applies because the railcar brake shoes are an essential part of the completed locomotive. 297 U.S. at 402 (defining "parts and appurtenances" as "[w]hatever in fact is an integral or essential part of a completed locomotive . . . ."). Here, Plaintiff's claims stem from brake shoes located on railcars, which are an essential and integral part of the locomotive braking system. State regulation of the railcar brake shoes would directly affect the locomotive brake system.  Thus, Plaintiff's attempt to differentiate the railcar brake shoes at issue here from the locomotive brake shoes at issue in Kurns is unavailing.

Second, Plaintiff's claims are preempted under the Lunsford definition because the Secretary of Transportation has the authority to regulate the field of locomotives and their parts and appurtenances, and specifically can promulgate regulations relating to passenger cars and the locomotive brake system. 297 U.S. at 402 (defining "parts and appurtenances" as ". . . all parts or attachments definitely prescribed by lawful order or the [Secretary] are within the statute."); see also Marshall, 720 F.2d at 1152 (holding state may not impose liability when

13

authority is delegated to Secretary to prescribe the same part or attachment (citing Napier, 272 U.S. at 611)); Oglesby, 180 F.3d at 461 (holding inquiry is not whether Secretary has exercised its authority but whether it possessed power in first place). Therefore, Plaintiff's claims are preempted because the authority to prescribe laws relating to the railcar brake shoes lies with the Secretary.

Plaintiff is mistaken in asserting that the brake shoes - or the asbestos dust attributed to the brake shoes - should not be considered appurtenances when they are not attached to the railcars. Here, the facts are analogous - and practically identical - to the facts in Kurns in which the Court rejected the argument that the LIA did not preempt claims related to the maintenance of locomotive brake shoes that were not in use at the time. Plaintiff's attempt to draw narrow distinctions is ineffective given the scope of the rule announced by the Supreme Court in Kurns and Napier.[10]

---

[10] "[U]nder [our] system, lower courts are obligated to follow both the narrow holding announced by the Supreme Court as well as the rule applied by the Court in reaching its holding." United States v. Powell, 109 F. Supp. 2d 381, 383–84 (E.D. Pa. 2000) (Robreno, J.); see also Planned Parenthood v. Casey, 947 F.2d 682, 691 (3d Cir. 1991), aff'd in part and rev'd in part on other grounds, 505 U.S. 833 (1992) ("As a lower court, we are bound by both the Supreme Court's choice of legal standard or test and by the result it reaches under that standard or test.").

Moreover, it would lead to an absurd result if state law claims pertaining to locomotive brake shoes were preempted by federal law, but claims relating to the same exact parts that were connected to the railcars were not. Uniformity is a primary goal of federal railroad regulation. Kurns I, 620 F.3d at 398. And, just as it would be difficult to ensure that a self-propelled locomotive could meet each state's laws, it also would be difficult to ensure that a railcar that is not self-propelled but that travels across state lines as frequently as the locomotive pulling it could meet each state's restrictions. Id. It would not make logical sense for a state to be able to regulate brake shoes on railcars, when the state could not also regulate brake shoes on the self-propelled locomotives that are connected to the railcars. Such a result would undermine the uniformity in the laws that Congress has sought since enacting the relevant federal statutory scheme discussed herein.

**IV.   CONCLUSION**

For the reasons set forth above, Plaintiff's state law claims are preempted. An appropriate order follows.